1  KELLY T. WOOD
   Assistant Attorney General
2  Washington Office of the Attorney General
   Environmental Protection Division
3  800 5th Ave Ste. 2000 TB-14
   Seattle, Washington 98104
4  (206) 326-5493

5  *Attorney for Plaintiff State of Washington*

6  **UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF WASHINGTON**

7

8  STATE OF WASHINGTON,                    NO.

9                   Plaintiff,             COMPLAINT

10            v.

11  CROWN RESOURCES
    CORPORATION and KINROSS
12  GOLD U.S.A., INC.,

13                   Defendants.

14  **I.    INTRODUCTION**

15      1.1    Plaintiff, the State of Washington, by and through its attorneys

16  Robert W. Ferguson, Attorney General, and Kelly T. Wood, Assistant Attorney

17  General, brings this action against Defendants named below for violations of the

18
    Clean Water Act, 33 U.S.C. § 1251 *et seq.* and the Washington Water Pollution
19
    Control Act, Chapter 90.48 RCW.
20

21      1.2    Crown Resources Corporation and Kinross Gold U.S.A., Inc.,

22  collectively Defendants, are—and have been for years—in violation of the

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

federal Clean Water Act and the state Water Pollution Control Act at a gold mine in Okanogan County, Washington (the Buckhorn Mine).

1.3    As set out below, Defendants have consistently disregarded the obligations of its National Pollutant Discharge Elimination System (NPDES) permit for the Buckhorn Mine, to the detriment of the surrounding waters and in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and Chapter 90.48 RCW. These harms adversely affect Washington and its residents by contaminating numerous waters in and around the Buckhorn Mine site. The State of Washington brings this action to end years of noncompliance by Defendants and to ensure the remediation of the waters degraded by Defendants as they exported gold from Washington state.

## II.    JURISDICTION

2.1    This action arises under the Clean Water Act, 33 U.S.C. § 1365. This Court has subject matter jurisdiction over Clean Water Act claims under 33 U.S.C. § 1365(a). This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as well as under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.2    This Court has subject matter jurisdiction over the State's Chapter 90.48 RCW claim under 28 U.S.C. § 1367(a).

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

2.3     The Clean Water Act authorizes citizen suits against "any person," including the United States or its agencies, alleged to be in violation of an effluent standard or limitation. 33 U.S.C. §1365(a)(1). District courts have the authority to "enforce such an effluent standard or limitation … and to apply any appropriate civil penalties …." 33 U.S.C. §1365(a). The State of Washington is a "citizen" authorized to sue under the Clean Water Act. *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 614, 616 & nn.5, 9 (1992) ("A State is a 'citizen' under the CWA.").

2.4     Pursuant to the notice requirements in 33 U.S.C. § 1365(b)(1)(A), the Washington State Attorney General's Office on March 5, 2020, notified Defendants of Washington's intent to file suit to restrain or abate the violations described in this Complaint (Notice Letter). A copy of the Notice Letter is attached as <u>Exhibit 1</u>. Plaintiff notified the Managing Agent for Defendant Crown Resources, the Registered Agents of both Defendants, the Administrator of the United States Environmental Protection Agency (EPA), the Administrator of EPA Region 10, and the Director of the Washington State Department of Ecology (Ecology) of its intent to sue Defendants by mailing copies of the Notice Letter to these officials on March 5, 2020.

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Ave STE 2000
Seattle, WA 98104
(206) 464-7744

2.5    More than 60 days have passed since the Attorney General's office sent its Notice Letter. The conditions complained of are continuing, or are reasonably likely to continue to recur.

2.6    Neither the EPA nor Ecology is prosecuting a civil or criminal action in a court of the United States or a state to require compliance with the violations at issue in the current action.

## III.    VENUE

3.1    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Washington's claims occurred within this judicial district. Venue is also proper in this Court pursuant to 33 U.S.C. §1365(c)(1) because the source of the discharge is located within this judicial district.

## IV.    PARTIES

4.1    Plaintiff is the State of Washington (State), a sovereign entity that brings this action to protect its own quasi-sovereign and proprietary rights. The State owns the groundwater and surface waters of the state, including the waters in and around the Buckhorn Mine. The State, through Ecology, is also responsible for promulgating Water Quality Standards designed to protect human health, aquatic life, and aesthetic and recreational uses of state waters, and to prevent

COMPLAINT

4

degradation of the state's waters. This action is brought pursuant to the Attorney General's independent constitutional, statutory, and common law authority to bring suit and obtain relief on behalf of the State based on impacts to the state's proprietary interests. This challenge is also brought pursuant to the Attorney General's authority to bring actions pursuant to Washington's interest, as *parens patriae*, in the general health and well-being of its residents.

4.2    Defendant Crown Resources Corporation (Crown) is a Washington for-profit corporation with a principal office address of 363 Fish Hatchery Road, Republic in Washington.

4.3    Defendant Crown owns and operates a gold mine at Buckhorn Mountain in Okanogan County, Washington.

4.4    Defendant Kinross Gold U.S.A., Inc. (Kinross) is a foreign for-profit corporation registered to conduct business in Washington with a principal office address of 5075 South Syracuse Street, Floor 8, Denver, Colorado. Defendant Crown is a wholly owned subsidiary of Defendant Kinross Gold U.S.A., Inc.

## V.    STATUTORY BACKGROUND

5.1    The Federal Clean Water Act, 33 U.S.C. § 1251 et seq., prohibits the discharge of pollutants by any person to waters of the United States, unless in compliance with the provisions of the Act. 33 U.S.C. §1311(a). As a result,

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

discharge of pollutants from a point source is unlawful unless the discharger first obtains a National Pollutant Discharge Elimination System (NPDES) permit in accordance with Section 402 of the Clean Water Act and the discharges fully comply with the terms set out in the permit. 33 U.S.C. § 1342.

5.2    The Clean Water Act, Section 505(a), 33 U.S.C. § 1365(a), allows any person to commence a civil action against another person who is alleged to be in violation of an effluent standard or limitation under the Act. Effluent standards or limitations are defined to include a permit or permit condition issued under Section 402 of the Act. 33 U.S.C. § 1365(f).

5.3    The Washington Water Pollution Control Act, Chapter 90.48 RCW, prohibits the unpermitted discharge of any materials into waters of the State that cause or tend to cause pollution. RCW 90.48.080. All discharges must also comply with Washington's Water Quality Standards (Chapter 173-201A WAC). These standards, approved by EPA, are designed to protect designated uses of state waters, including human health, aquatic life, and recreation and to protect high quality waters from degradation. 33 U.S.C. § 1313; *see also* Chapter 173-201A WAC; Chapter 173-200 WAC.

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

## VI.    FACTS

2

**A.    Defendants' Corporate Structure**

3

6.1    Defendant Crown is a wholly owned subsidiary of Defendant

4

Kinross. Together, Defendants own and operate the Buckhorn Mountain gold

5

mine in Okanogan County, Washington. Defendant Crown owns and operates the

6

Buckhorn Mine and Defendant Kinross has operational control over both

7

Defendant Crown and the Buckhorn Mine.

8

9

6.2    Defendant Kinross effectively controls Crown's environmental

10

compliance at the Buckhorn Mine and directs Crown's actions with regard to

11

such compliance. Defendant Kinross submits (and has submitted) letters, data,

12

and reports regarding operation of the Buckhorn Mine to regulatory agencies,

13

including Ecology, regarding compliance with applicable environmental

14

regulations. These include, but are not limited to, state and federal water pollution

15

control laws.

16

17

6.3    Upon information and belief, the Environmental Compliance

18

Manager for the Buckhorn Mine, Ms. Jacquelyn Nutt, is an employee of

19

Defendant Kinross, not of Defendant Crown. Ms. Nutt has signed various letters

20

and reports regarding Permit compliance at the Buckhorn Mine provided to

21

Ecology on behalf of Crown.

22

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

6.4     Mr. Mark Ioli is a corporate officer of Crown. Upon information and belief, Mr. Ioli is also the general manager of the Buckhorn Mine and is an employee of Defendant Kinross.

6.5     Mr. Gregory Van Etter is a corporate officer of Crown. Based on information and belief Mr. Van Etter is also a corporate officer and the current President of Kinross.

6.6     Upon information and belief, Ms. Gina Myers is the site manager and the former environmental compliance manager at the Buckhorn Mine and is an employee of Defendant Kinross, not of Defendant Crown.

6.7     Upon information and belief, the profits from ore extraction from the Buckhorn Mine, estimated at approximately 34 tons of gold, accrued to Defendant Kinross, and not to Defendant Crown.

**B.     Buckhorn Mine**

6.8     The Buckhorn Mine is an approximately 50 acre underground gold mine constructed in the Myers Creek Mining district, approximately 3.5 miles east of the town of Chesaw in Okanogan County.

6.9     Construction on the Buckhorn Mine began in 2007, and active ore extraction began in approximately early 2008. The Buckhorn Mine consists of a series of underground tunnels excavated beneath Buckhorn Mountain. Many of

COMPLAINT

8

these tunnels lie below the water table. During mining, aboveground features of the Buckhorn Mine included access roads, maintenance shops, ore and development rock stockpiles, detention ponds, and a mine water treatment plant (MWTP). Some, but not all, of these aboveground features have been decommissioned.

6.10    Ore extraction at the Buckhorn Mine lasted through approximately 2017. While in active operation, Defendants extracted approximately $1.3 billion worth of gold from the Buckhorn Mine. Crown ceased extractive activity and began mine reclamation in 2017.

6.11    From construction through the present day, Defendants discharge pollutants from the Buckhorn Mine to both ground and surface waters in and around the Buckhorn Mine site. These pollutants include aluminum, ammonia, arsenic, chloride, copper, iron, lead, nitrates, sulfate, total dissolved solids, and zinc.

6.12    Discharges to groundwater travel anywhere from a few hundred to a few thousand feet to ultimately discharge to surface waters at or near the Buckhorn Mine site via hydraulic connectivity. Surface waters receiving discharges include Gold Bowl, Nicholson, Marias, Ethel, Bolster, and Gold

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Creeks. These creeks flow into Myers Creek and Toroda Creek, both of which flow into the Kettle River, a tributary of the Columbia River.

6.13    Each of the aforementioned surface waters is a Water of the United States under the Clean Water Act and a Water of the State under the Washington Water Pollution Control Act. Groundwaters at the site are Waters of the State under the Washington Water Pollution Control Act.

C.    **Defendants' Discharge Permit**

6.14    Prior to construction of the Buckhorn Mine, Ecology conducted an environmental review of the Buckhorn Mine proposal, culminating in September 2006 with a Final Supplemental Environmental Impact Statement (FSEIS). The FSEIS examined baseline water quality data collected for the Buckhorn Mine site from 1992 to 1996 and from 2003 to 2006. In general, the FSEIS identified that background water quality at the site exhibited little signs of impact from human activity.

6.15    The FSEIS also identified the potential for impacts from the Buckhorn Mine to surface and groundwaters in and around the Buckhorn Mine site, including changes in water chemistry. The FSEIS specifically noted the potential for acid generation and mobilization of metals due to storage of the development rock/ore at the surface and the placement of development rock back

COMPLAINT

10

1  into the mine excavations. The FSEIS also indicated that the use of explosives at

2  the Buckhorn Mine could cause elevated levels of nitrates in surface and ground

3  waters.

4
5      6.16    Due to anticipated discharges from the operation of the Buckhorn

6  Mine, operation of the Buckhorn Mine required Crown to obtain an NPDES

7  permit for its discharges. Ecology issued the first permit for the Buckhorn Mine,

8  permit number WA0052434, in 2007. The Permit required Crown to capture and

9  treat all mine-contaminated water and authorized the discharge of treated mine

10  water and storm water subject to various operation, monitoring, and reporting

11  requirements in order to meet state Water Quality Standards and to preserve the

12  pre-mining quality of the surrounding waters. The monitoring requirements

13  included a network of monitoring wells, surface water monitoring stations, and

14  piezometers surrounding the Buckhorn Mine.

15
16      6.17    Ecology re-issued Crown's NPDES permit in February 2014, with

17  an effective date of March 1, 2014. Ecology again re-issued the permit with minor

18  revisions in April 29, 2014 and April 1, 2015 (collectively, the "Permit"). The

19  2014 Permit was administratively extended beyond the February 28, 2019

20  expiration date pending issuance of a renewed permit.

21
22

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

6.18   Crown appealed its 2014 Permit in February 2014 to the Washington Pollution Control Hearings Board (PCHB). The PCHB upheld the Permit. *Crown Resources Corp. v. Ecology*, PCHB No. 14-018, 2015 WL 4719130 (July 30, 2015). Crown appealed the PCHB's decision to Ferry County Superior Court, which affirmed the PCHB and upheld the Permit as well. *Crown Resources Corp. v. Ecology*, Ferry Superior Court, No. 15-2-00075-0 (March 13, 2017). Crown appealed that decision to Division III of the Washington Court of Appeals, which affirmed as well. *Crown Res., Corp. v. Ecology*, 10 Wn. App.2d 1040, 2019 WL 4942459 (Oct. 8, 2019)(unpublished). After the Court of Appeals denied Crown's reconsideration motion, Crown did not seek discretionary review of the Court of Appeals decision at the Supreme Court. Throughout its appeal of the 2014 Permit, Crown did not seek—or receive—a stay of the Permit pending appeal.

6.19   Crown's Permit, as modified in 2015, requires that Crown capture and treat mine-impacted water at the Buckhorn Mine site, including stormwater, wastewater, and contaminated groundwater in order to protect waters in and around the Buckhorn Mine.

**D.    Defendants' Past and Ongoing Violations of Permit Conditions**

6.20   Defendants have continuously violated the conditions and requirements of the Permit since its issuance in 2014, continuing Defendants'

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

history of permit violations throughout their operation of this mine. These violations also constitute violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342, as well as Chapter 90.48 RCW. These violations are set out in detail in Section II.a of the Notice Letter and listed in Attachment A thereto, and are incorporated herein by reference. See Exhibit 1.

Effluent Limit Violations

6.21   Permit condition S1.A7 requires Crown to meet average monthly numeric effluent limits in surface waters, groundwater, and seeps/springs for chloride, nitrate and Nitrite, oil and grease, sulfate, total dissolved solids, total suspended solids, specific conductance, ammonia, arsenic, copper, iron, manganese, zinc and pH. See Tables 6, 7, 13 of Exhibit 1. Permit Condition S2 requires effluent limits be met at specified monitoring points of compliance. See Table 13 Exhibit 1. The Permit contained interim limits for both surface and groundwater points of compliance that were applicable from March 1, 2014 to December 31, 2014. The final limits, applicable to the violations included in this Complaint, became effective on January 1, 2015.

6.22   Crown violated Section 301(a) every day since March 5, 2015, by discharging various pollutants from the Buckhorn Mine in excess of the limits set out in the Permit. The specific dates on which Crown monitored compliance

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   points to calculate the monthly average values are listed in Attachment A to the

2   Notice Letter. See <u>Exhibit 1</u>. These violations are ongoing.

3       <u>Failure to Maintain Capture Zone</u>

4

5   6.23   Permit Condition S1.A.2.1 requires Crown to ensure that all water

6   impacted by the mining operation is captured, routed to a treatment plant, and

7   treated to meet effluent limits before discharge. The Permit defines this concept

8   as a "Capture Zone," a three-dimensional area representing "the farthest extent

9   from the mine that mine-related contaminants in groundwater and surface water

10  are allowed."

11

12  6.24   The monitoring results from the surrounding surface waters and

13  ground waters show that contaminants from the Buckhorn Mine have

14  consistently escaped the Capture Zone in violation of the Permit. Crown has

15  failed to maintain the Capture Zone every day since March 5, 2015, in violation

16  of the Permit and of the Clean Water Act. These violations are ongoing.

17      <u>Trigger Exceedance Violations</u>

18

19  6.25   Permit Condition S2 requires Crown to monitor specified points of

20  compliance for trigger level concentrations of manganese, sulfate and total

21  suspended solids. Crown must then report levels above the trigger level to

22  Ecology and submit a written plan if the results exceed a specified level.

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

6.26  For manganese, Condition S2, Table 14, establishes a trigger level at MW-4 of 220 µg/L. Once this level is exceeded, Crown must: (1) report the result to Ecology within 72 hours of receipt of the data; and (2) if the result exceeds 220 µg/L in the following month, submit a written plan for evaluation to Ecology within one week of the receipt of the data. Crown's monthly discharge monitoring reports (DMRs) show it exceeded the manganese trigger each month from June 2015 to November 2015, February and March 2016, April 2017, and August 2017. Crown violated the Permit by failing to notify Ecology of these exceedances within 72 hours. Crown also violated the Permit by failing to submit a written plan for evaluation to Ecology within one week of receipt of the data for July, August, September, October, and November 2015, and March 2016.

6.27  For sulfate, Condition S2, Table 13, establishes a trigger level at SW-4 of 72 mg/L. Once this level is exceeded, Crown must: (1) report the result to Ecology within 72 hours of receipt of the data; and (2) if the result exceeds 72 mg/L in the following month, submit a written plan for evaluation to Ecology within one week of the receipt of the data. Crown's DMRs show it exceeded the sulfate trigger in May 2016. Crown violated the Permit by failing to notify Ecology of these exceedances within 72 hours.

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

6.28    For total suspended solids, Condition S2, Table 13, establishes a trigger level at SW-4 and SW-5 of 20 mg/L. Once this level is exceeded, Crown must: (1) report the result to Ecology within 72 hours of receipt of the data; and (2) if the result exceeds 20 mg/L in the following month, submit a written plan for evaluation to Ecology within one week of the receipt of the data. Crown's DMRs show it exceeded the total suspended solids trigger at SW-4 and SW-5 in May 2017. Crown violated the Permit by failing to notify Ecology of these exceedances within 72 hours.

6.29    Permit Condition S3.D requires Crown to take immediate action to stop noncompliance with the Permit which leads to violations and to correct the underlying problem. Crown failed to take this action for each of the violations contained in this Complaint, in the Notice Letter and in Attachment A thereto.

Reporting Violations

6.30    Permit Condition S3.D.a requires Crown to report to Ecology within 24 hours of discovery any failure of the groundwater Capture Zone.

6.31    The Discharge Monitoring Report data reported by Crown shows a continuing failure of the Capture Zone for every day of the statute of limitations. However, Crown did not report this failure to Ecology as required under the Permit. This is a violation of the Permit for every day of the statute of limitations.

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

6.32 Permit Condition S3.D.b requires Crown to report any noncompliance with the Permit that may endanger health or the environment to Ecology within 24 hours of discovery.

6.33 Each of the violations described in this Complaint and in the Notice Letter endangers health and/or the environment. Crown violated the reporting requirement for each violation listed in this Complaint and in the Notice Letter.

6.34 Permit Condition S3.D.c requires Crown to submit a written report to Ecology within five days of discovery of certain reportable events listed in Conditions S3.D.a or S3.D.b in the Permit.

6.35 For each of the permit violations listed in this complaint and in the Notice Letter, Crown failed to provide the required written report to Ecology within five days. Each of these failures is a further violation of the Permit.

Notification and Planning Violations

6.36 Condition S6 of the Permit requires Crown to implement actions in the Adaptive Management Plan for Water Quality and to update the Adaptive Management Plan. The deadline for Crown to submit an approvable Adaptive Management Plan was July 1, 2014.

6.37 Crown submitted an Adaptive Management Plan to Ecology that was not approvable. To this day, Crown has not submitted an approvable

COMPLAINT

17

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    Adaptive Management Plan to Ecology. Crown has thus violated the Permit on

2    every day since July 1, 2014.

3
      6.38    Permit Condition S16 requires Crown to submit a plan for operating
4
      the MWTP during rehabilitation of the Buckhorn Mine and the post closure phase
5
      to Ecology 90 days prior to mine closure.
6

7          6.39   Upon   information   and   belief,   mine   closure   occurred   in

8    approximately May 2017.

9          6.40    Crown did not submit a plan for operation of the MWTP during

10   rehabilitation until November 10, 2017. Crown thus violated Condition S16

11   every day from 90 days prior to mine closure until November 10, 2017.

12
      6.41    Permit Condition G4 requires Crown to notify Ecology of planned
13
      physical alterations to the facility that will result in a significant change in or an
14
15   increase of pollutants discharged.

16         6.42    Upon information and belief, Crown dismantled the MWTP in 2017

17   and then did not install a new plant for six months. Crown failed to notify Ecology

18   of an increase in pollutants that would be discharged when Crown dismantled the

19
      MWTP. Crown has thus been in violation of Condition G4 during this period.
20
      6.43    Permit Condition G5 requires Crown to provide an engineering
21
22   report and plans to Ecology prior to modifying any wastewater control facilities.

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

6.44   Crown dismantled and replaced the MWTP without submitting the required materials to Ecology. Crown thus violated the Permit.

## VII.   CAUSES OF ACTION

### First Cause of Action
### Violations of the Federal Clean Water Act
### (33 U.S.C. § 1251 et seq.)

7.1     Plaintiff re-alleges the facts set out in the Paragraphs 1 through 6.44 and in the Notice Letter attached hereto as Exhibit 1, as though fully set out herein.

7.2     Section 301 of the Clean Water Act prohibits the discharge of pollutants from a point source to waters of the United States except as authorized pursuant to a valid permit under Clean Water Act Section 402. 33 U.S.C. § 1311(a). Section 301 also prohibits violations of effluent limitations established pursuant to the Clean Water Act, including those promulgated by states. 33 U.S.C. §1311(b)(1)(C). Violations of an NPDES permit constitute violations of the Clean Water Act.

7.3     Section 505 of the Clean Water Act permits citizen suits against any person who is alleged to be in violation of an "effluent standard or limitation," including those promulgated pursuant to Section 301 of the Act and including the terms and conditions of an NPDES permit. 33 U.S.C § 1365(a), (f).

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

7.4    Defendants' actions as set out above and in the Notice Letter constitute a discharge of pollutants in violation of applicable effluent standards or limitations.

7.5    Defendants' violations are continuing, ongoing, and reasonably likely to reoccur. Any and all additional violations of the CWA which occur after those described in Plaintiff's Notice Letter but before a final decision in this action should be considered continuing violations subject to this complaint.

**Second Cause of Action**
**Violations of Washington Water Pollution Control Act**
**(Chapter 90.48 RCW)**

7.6    Plaintiff re-alleges the facts set out in Paragraphs 1 through 6.44 as though fully set out herein.

7.7    The Washington Water Pollution Control Act prohibits the unpermitted discharge of any materials into waters of the state that cause or tend to cause pollution. The Washington Water Pollution Control Act and federal Clean Water Act also require Ecology to develop Water Quality Standards (Chapter 173-201A) that are protective of designated uses of state waters, including suitability for aquatic life and recreation. These Water Quality Standards contain numeric and narrative criteria and the antidegradation policy, and have been approved by EPA as part of Washington's authorized federal

COMPLAINT

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Clean Water Act program. All actions within state waters must comply with the Water Quality Standards.

7.8    Defendants' actions as set out above violate the Washington Water Pollution Control Act's ban on the unpermitted discharge of matter causing or tending to cause pollution. Defendants' discharges also violate applicable Washington Water Quality Standards, and the terms and conditions of the permit issued for the Mine.

## VIII.  RELIEF REQUESTED

WHEREFORE, the State respectfully requests that this Court:

A. Adjudge and decree that Defendants' conduct complained of herein violates, and continues to violate, the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and the Washington Water Pollution Control Act, Chapter 90.48 RCW;

B. Order Defendants to take all such actions necessary to comply with the Clean Water Act, the Washington Water Pollution Control Act, and the terms of their NPDES Permit;

C. Order Defendants to pay civil penalties pursuant to Sections 309(d) and 505(a) of the Clean Water  Act, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

COMPLAINT

21

ATTORNEY GENERAL OF WASHINGTON
Counsel for Environmental Protection
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

D. Issuing temporary and/or permanent injunctive relief against Defendants, including ordering Defendants to cease all activities that violate the Clean Water Act, the Washington Water Pollution Control Act, and/or the terms and conditions of their NPDES permit.

E. Award Plaintiff the costs of litigation, including reasonable attorneys' and expert witness fees;

F. Such other relief as the Court may deem just and proper.

DATED this 7th day of May, 2020.

**ROBERT W. FERGUSON**
**ATTORNEY GENERAL**

*/s/* Kelly T. Wood
Kelly T. Wood, WSBA #40067
Assistant Attorney General
Washington Office of the Attorney General
Environmental Protection Division
800 5th Avenue, Suite 2000, TB-14
Seattle, WA 98104-3188
(206) 326-5493

COMPLAINT

22